IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-10712
_____

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

                                        Plaintiff-Appellee,

                    versus

EXXON CORPORATION,

                                        Defendant-Appellee,

                    versus

UNITED STATES DEPARTMENT OF
JUSTICE,

                                        Appellant.
_____

Appeal from the United States District Court
For the Northern District of Texas
_____
January 28, 2000

Before HIGGINBOTHAM and SMITH, Circuit Judges, and DUPLANTIER,

District Judge.[*]

PATRICK E. HIGGINBOTHAM, Circuit Judge:

     Today we decide whether the Ethics in Government Act permits

two former government attorneys to act as fact or expert witnesses

for a private party in a suit brought by the government.  On

interlocutory appeal, we affirm the district court's holding that

the attorneys may testify in both capacities and may be compensated

for expert testimony.  We also conclude that their testimony need

not be disallowed under the District of Columbia's Bar rules.

_____

     [*] District Judge of the Eastern District of Louisiana, sitting
by designation.

The EEOC alleges that Exxon's substance abuse policy, which permanently bars employees who have undergone substance abuse treatment from holding certain safety-sensitive positions, violates the Americans with Disabilities Act. Two of Exxon's defenses are relevant to this appeal. Exxon asserts the suit is improper because the government required the policy as a condition of settling criminal charges arising out of the 1989 Valdez oil spill. That earlier suit involved charges that Exxon's failure to monitor an employee's alcoholism had contributed to the accident. Exxon also contends that given this history, the ADA does not require it to accommodate employees with a history of substance abuse treatment in the designated positions.

To support these defenses, Exxon hired two former government attorneys to act as fact and expert witnesses. The attorneys, Richard Stewart and Stuart Gerson, were senior Department of Justice officials involved in the prosecution and settlement of the Valdez matter. In their expert witness disclosures, Stewart and Gerson proposed to testify about the events leading up to Exxon's settlement with the government, as well as the potential legal consequences to Exxon if it abandoned its substance abuse policy and another accident occurred. Gerson, who worked on ADA issues during his government tenure, additionally proposed to testify about Exxon's duty to reasonably accommodate the plaintiffs under the statute.

The Department of Justice advised Stewart and Gerson that they could not testify under the Ethics in Government Act ("EIGA"), and they conditionally withdrew. Exxon filed a motion to allow their testimony. The magistrate judge recommended that the district court hold that Gerson and Stewart did not fall under the prohibitions of the EIGA and alternatively that even if they did, a court order permitting the testimony should issue as long as the testimony was limited to publicly-known information. The district court adopted that recommendation, and the Justice Department appealed as a non-party.

II

We first must decide whether we have jurisdiction of this interlocutory appeal under the collateral order doctrine. The collateral order doctrine is applicable where (1) the order conclusively determines the disputed question; (2) the issue is important and separate from the merits of the case; and (3) the order is effectively unreviewable on appeal from final judgment. See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144-45 (1993).

We agree that this case satisfies the requisite elements for collateral order jurisdiction. The determination as to Gerson's and Stewart's eligibility as experts is conclusive and collateral to the merits of the underlying litigation. DOJ may be unable to appeal the order if EEOC ultimately prevails on the merits.

3

III

The Ethics in Government Act permanently bars former Executive branch employees from making certain communications to a court or agency:

> on behalf of any other person (except the United States or the District of Columbia) in connection with a particular matter --
> (A) in which the United States or the District of Columbia is a party or has a direct and substantial interest. . . .

18 U.S.C. § 207(a) (1999). Exxon argues that the statute is inapplicable because the events surrounding the Valdez litigation and the current ADA suit are not the same "particular matter." The statute defines "particular matter" as including:

> any investigation, application, request for a ruling or determination, rulemaking, contract, controversy, claim, charge, accusation, arrest, or judicial or other proceeding.

§ 207(i)(3). The Seventh Circuit has articulated a standard which requires the same specific parties, subject matter, and "substantially" overlapping facts. See United States v. Medico Indus., Inc., 784 F.2d 840, 843 (7th Cir. 1986).

While there are many differences between the Valdez litigation as a whole and the current case, we find it more appropriate to compare the narrower issue of the Valdez settlement with this suit. Only the government's requirements for settlement, not the entire litigation, are relevant to Exxon's defenses here. The Valdez settlement and this suit do satisfy the statutory requirements. The settlement is a "contract," a term included in the statutory definition. Both matters involve the federal government and Exxon,

4

and each deals with Exxon's substance abuse policy.  Gerson's and Stewart's testimony would have little value if the facts were not substantially overlapping.

That the two events qualify as the same matter, however, does not end our inquiry.  To the extent the witnesses will testify as to facts and opinions regarding the Valdez settlement, the EIGA does not prohibit their conduct.  The statute specifically creates an exception to § 207(a)(1) for testimony under oath.  See § 207(j)(6).  The government concedes that this testimony is not barred by the EIGA.

Some of the proposed testimony -- regarding Exxon's potential future liability and the ADA -- would properly be characterized as expert testimony.  This testimony is subject to the lifetime ban of § 207(a)(1).  Section 207(j) provides that the exception for testimony does not extend to serving as an expert witness.  See § 207(j)(6)(A).  The legislative history indicates that Congress specifically sought to include expert witnesses in the bar of § 207(a).  See Sen. Rep. No. 95-170, at 48 (1978), reprinted in 1978 U.S.C.C.A.N. 4217, 4264.

The statute allows a former employee covered by § 207(a)(1) to serve as an expert witness only pursuant to court order.  See § 207(j)(6).  The statute is silent as to when an order may issue, but regulations issued by the Office of Government Ethics under the pre-1988 version of the EIGA provide some guidance.[2]  The

---

[2] The OGE has not adopted formal regulations for the relevant provision of the amended statute.  5 C.F.R. § 2637 note.  Because we conclude that the expert testimony at issue is not prohibited

5

regulations carve out two exceptions allowing a former employee to testify as an expert. The first, relied upon by the district court, provides that the employee may serve as expert:

> (1) To the extent that the former employee may testify from personal knowledge as to occurrences which are relevant to the issues in the proceeding, including those in which the former Government employee participated, utilizing his or her expertise. . . .

5 C.F.R. § 2637.209(1) (1992). Gerson's and Stewart's testimony fits this exception. Their expert testimony flows from their participation in the Valdez settlement and other matters handled during their government employment.

The Justice Department argues that even if the exception applies, it does not permit paid expert testimony. The Department cites an informal advisory letter from the OGE, which states that "compensated expert testimony" is not permitted under the exception. Off. Gov't Ethics Ltr., 1989 WL 253555, at *4 (Dec. 21, 1989). The letter suggests that compensation would be permissible only for witnesses fitting the second exception, 5 C.F.R. § 2637.209(2), which permits an employee to serve as an expert when no other expert can be obtained. See id.

An advisory opinion is entitled to deference if it is reasonable and harmonizes with the plain language of the statute, its origin and purposes. See Fort Hood Barbers Ass'n v. Herman, 137 F.3d 302, 307 (5th Cir. 1998) (regarding interpretive regulation). The OGE, however, offers no statutory authority or

under the OGE regulations, we need not decide whether those regulations have any legal force.

6

explanation for its view. While there might be some appeal to a rule that limits compensation to "emergency" experts, we can find no support in the statute to create a category of unpaid experts. The federal bribery statute cited by the Justice Department, 18 U.S.C. § 201, clearly characterizes "expert witnesses" as those who may be compensated for their time:

> [This provision] shall not be construed to prohibit . . . the payment, by the party upon whose behalf a witness is called and receipt by a witness, of the reasonable cost of travel and subsistence incurred and the reasonable value of time lost in attendance at any such trial, hearing, or proceeding, or in the case of expert witnesses, a reasonable fee for time spent in the preparation of such opinion, and in appearing and testifying.

18 U.S.C. § 201(d) (1999). The statute confirms the ordinary understanding of how the two categories of witnesses may be compensated. We find the OGE's announcement contrary to the plain meaning of "expert".

We also are not convinced by the Justice Department's claims that every former government employee will be able to receive compensation through the exception. While some witnesses do testify both as fact and expert witnesses, the evidentiary rules requiring qualification as an expert will ensure that only those with special knowledge will be so designated. See FED. R. EVID. 702 (1999). Similarly, the normal evidentiary channels will allow the government to assert any claims of privilege.[3]

---

[3] We do not decide whether the Justice Department's Touhy regulations, 28 C.F.R. § 16.21, were applicable to this matter. Contrary to counsel's assertions at oral argument, that issue was not properly briefed to this court.

IV

The Justice Department also urges that we disallow the testimony under the District of Columbia's Bar Rule 1.11(a), which prevents a lawyer from accepting other employment in connection with a matter substantially related to one in which the lawyer participated as a government employee.

We have held that issues regarding disqualification of counsel are informed not only by the local ethical rules, but also by ethical rules announced by the national legal profession in light of the public interest and the litigants' rights. See In re American Airlines, 972 F.2d 605, 609-10 (5th Cir. 1992) (citing In re Dresser Airlines, 972 F.2d 540, 543-44 (5th Cir. 1992)). Those same sources logically should be consulted in determining the propriety of testimony. Here, the relevant rules include the ABA Model Rules, the Texas rules because of the venue of the suit, and the rules of the District of Columbia, where Gerson and Stewart are members of the Bar.

Upon reviewing the applicable ABA guidelines and the Texas and District of Columbia rules, we conclude that the district court did not abuse its discretion in allowing the testimony. Both ABA Model Rule 1.9 and the corresponding Texas rule, 1.09(a), forbid an attorney from successive representation, a prohibition against acting as a lawyer for a client. ABA MODEL R. 1.9; TEX. BAR R. 1.09(a) (1999). Gerson and Stewart have not violated that prohibition.

8

The D.C. Rule's broader "employment" language suggests that serving as an expert witness might also be disallowed. D.C. BAR R. 1.11(a) (1999). No District of Columbia court has so applied the rule, however, and such an application would conflict with the EIGA and various other rules, including those of the District of Columbia. As we have seen, the EIGA allows fact and expert witnesses under certain circumstances. The ABA Model Rules and the corresponding state rules all permit a lawyer to use information that has become publicly known. See ABA MODEL R. 1.9(C)(1); TEX. BAR R. 1.05(b)(3); D.C. BAR R. 1.6 cmt. 8. These rules suggest that the sharing of public information in itself does not present an ethical bar.

Given the distinction in the ethical rules between testimony and representation, we decline to apply Rule 1.11(a) so as to bar the witness testimony. The Bar rule is intended to be less prophylactic than the EIGA: rather than a blanket prohibition designed to avoid even the appearance of impropriety, the rule precludes successive employment only where there is established or likely corruption of the litigation. See Brown v. District of Columbia Bd. of Zoning Adjustment, 486 A.2d 37, 46-48 (D.C. App. 1984) (construing predecessor rule to 1.11(a)). Such danger appears minimal here given the contours of Gerson's and Stewart's participation in the lawsuit.

We conclude that the general prohibition of 18 U.S.C. § 207(a)(1) applies to Gerson and Stewart insofar as their services are those of expert witnesses, but that the district court did not

err in issuing an order permitting the testimony under § 207(j)(6). We also hold that local ethical rules do not bar the testimony as limited by the district court.

AFFIRMED.