United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 4, 2005**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 04-50211
(Summary Calendar)

ANITA EVARO,

Plaintiff-Appellant,

versus

CONTINENTAL CASUALTY COMPANY,

Defendant - Appellee.

Appeal from the United States District Court
for the Western District of Texas
(USDC No. P-03-CV-36)

Before WIENER, BENAVIDES, and STEWART, Circuit Judges.

PER CURIAM:[*]

In this diversity action, Anita Evaro appeals the district court's grant of summary judgment

for Continental Casualty Insurance based on lack of subject matter jurisdiction. For the following

reasons, we AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

In August 1997, Anita Evaro ("Evaro") suffered a back injury while employed as a produce

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

inspector for RX Staffing Corporation at its Anchor West facility. Continental Casualty Co. ("Continental") provided workers' compensation insurance to RX Staffing. Evaro filed a claim for workers' compensation benefits for her injury. Continental denied the claim and contested the compensability of Evaro's injury before the Texas Workers' Compensation Commission ("TWCC"). After a contested case hearing, TWCC determined that Evaro's injury was compensable. Continental appealed the decision to the Appeals Panel, which also ruled in Evaro's favor. Subsequently, Continental began payment of both income and medical benefits to Evaro in 1998. Evaro consulted a team of physicians for her injury, among them Dr. Oei, a pain management specialist. Evaro was eventually diagnosed with a herniated disk and under went surgery on March 16, 2000. In March 2001, Dejaune Phillips, an adjuster with Continental, requested a peer review to determine whether the continued course of treatment Evaro was undergoing with Dr. Oei was reasonable and necessary.[1] Dr. Theodore Pearlman, a psychiatrist, conducted the peer review by looking over Evaro's medical records. In a report dated March 22, 2001, Dr. Pearlman concluded that Evaro's continued treatment by Dr. Oei and other doctors was not reasonable or medically necessary. He opined that Evaro's continued problems resulted from non-physical, psychological factors which could be preventing her improvement or contributing to the symptoms Dr. Oei and other providers were treating.[2] He recommended that follow-up visits be terminated and Evaro weaned from pain medications.

Dr. Oei continued to see Evaro through October 2001; although Continental denied payment for Evaro's visits to Dr. Oei from May 2001 through October 2001, citing the lack of medical

_____

[1] Evaro's treatment included back surgery, epidural treatments, ganglionectomies, implentation, x-rays, a trial spinal cord stimulator, and regular office visits.

[2] Specifically, he suggested Evaro suffered from Munchausen Syndrome - a facitious disorder with physical symptoms.

2

necessity for the services as indicated by Dr. Pearlman's report. Continental also refused to preauthorize a request by Dr. Oei for diagnostic tests in October 2001. Dr. Oei did not contest Continental's refusal to pay with TWCC nor did he ask Continental to reconsider their non-payment. Evaro contends she paid for Dr. Oei's services herself from the end of January of 2001 until the end of 2002; however, the district court noted there was no evidence Evaro paid for the treatments herself nor evidence that she challenged the denial of payment to TWCC or Continental.

In August 2002, Dr. Oei performed two ganglionectomies on Evaro that Continental Casualty had prospectively approved. Continental paid Dr. Oei for the operations but in an amount which was reduced to meet applicable TWCC fee guidelines. Dr. Oei did not challenge the reduced fee to Continental nor did he request medical dispute resolution with TWCC. On or about January 14, 2003, Dr. Oei notified Evaro of his decision to cease treatment of her as a patient. Evaro contends that Dr. Oei withdrew as her physician because of Continental's non-payment. Evaro asserts that her condition has worsened since Dr. Oei stopped treating her. On March 27, 2003, Evaro filed suit in Texas state court against Continental for breach of the duty of good faith and fair dealing because Continental denied payment of workers' compensation medical benefits without a reasonable basis. Continental removed the case to United States District Court, Western District of Texas based on diversity of citizenship. On January 28, 2004, the district court granted summary judgment for Continental based on lack of subject-matter jurisdiction. The district court concluded that Evaro did not exhaust her administrative remedies before TWCC prior to initiating this judicial proceeding. Evaro filed a timely appeal.

## DISCUSSION

I.     Standard of Review

3

We review the grant of summary judgment *de novo*, applying the same standards as the district court. See Mowbray v. Cameron County, Tex., 274 F.3d 269, 278 (5th Cir. 2001). Summary judgment is appropriate only when the record indicates "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56.

II.     Summary Judgment

Continental asserts that the district court was correct in finding it lacked jurisdiction over Evaro's suit because Evaro has not exhausted her administrative remedies with the TWCC. Continental contends the TWCC has never ruled that Evaro is entitled to the challenged medical treatments, and therefore, the courts have no authority to award damages for treatment the TWCC has not determined Evaro is entitled pursuant to Am. Motorists Ins. Co. v. Fodge, 63 S.W.3d 801 (Tex. 2001). According to Continental, Dr. Oei should have requested medical dispute review of the denial of payment, as was his right, so that TWCC could rule on whether payment was due.

Evaro counters that the TWCC made a final decision determining she is entitled to benefits when it concluded her injury was compensable. "An employee who suffers a compensable injury is entitled to all health care reasonably required by the nature of the injury as and when needed." TEX. LAB. CODE § 408.021(a)[3]. Evaro asserts that there is at least a fact issue about whether Continental's denial of medical benefits was a bad faith attempt to challenge the prior compensability decision.

The power to award compensation benefits lies exclusively with the Texas Workers'

---

[3] The employee is specifically entitled to health care that:
(1) cures or relieves the effects naturally resulting from the compensable injury;
(2) promotes recovery; or
(3) enhances the ability of the employee to return to or retain employment.

TEX. LAB. CODE § 408.021(a) (West 2004).

4

Compensation Commission. Bone v. Utica Nat'l Ins. Co. of Texas, 2003 WL 21810944, at *2 (Tex. App. Aug. 7, 2003), reh'g denied, (Dec. 5, 2003) (quotation marks omitted); accord Fodge, 63 S.W.3d at 803. TWCC has jurisdiction over disputes involving income benefits, preauthorization of medical care, and reimbursement of medical expenses. Fodge, 63 S.W.3d at 803 (quotation marks omitted). The TWCC has pro mulgated rules through which an insurance carrier can review the medical claims of health care providers. TEX. ADMIN. CODE §§ 133.301-.305 (West 2004). In turn, the rules provide for a dispute resolution process through which a health care provider or claimant can challenge the reduced payment or non-payment by a carrier. Id. § 133.305; TEX. LAB. CODE § 413.031(a)-(b). A party who is dissatisfied with the outcome of dispute resolution may seek relief from the State Office of Administrative Hearings, and subsequently, from the courts. Texas Workers' Comp. Comm'n v. Patient Advocates of Texas, 136 S.W.3d 643, 652-53 (Tex. 2004); TEX. LAB. CODE § 413.031(k). A party *must* exhaust their administrative remedies and there *must* be a final decision of the TWCC's Appeals Panel before a party may seek a judicial remedy. Cervantes v. Tyson Foods, Inc., 130 S.W.3d 152, 157 (Tex. App. 2003); TEX. LAB. CODE § 410.251. A court has no jurisdiction to award damages based on an insurance company's denial of preauthorization or failure to reimburse medical expenses if the TWCC has not determined that the claimant is entitled to preauthorization or reimbursement. Malish v. Pac. Employers Ins. Co., 106 S.W.3d 744, 746 (Tex. App. 2003) (quotation marks omitted).

The district court found that the only ruling TWCC ever made concerning the dispute between Evaro and Continental was its 1998 ruling that Evaro's injury was compensable. Evaro maintains that the 1998 ruling by TWCC that her injury was compensable, and thus that she is entitled to all reasonable health benefits associated with her injury, is a final decision that satisfies the exhaustion

requirement. Continental notes that retrospective, prospective or concurrent review of medical treatment is distinct from compensability. See TEX. ADMIN. CODE § 134.600(h)-(i). Although, Continental cannot challenge the final decision of the TWCC concerning the compensability of Evaro's injury, Continental asserts it was entitled to review the reasonableness or the necessity of Evaro's medical treatments. Id. § 133.301(a)(9); id. § 133.304; see also TEX. LAB. CODE § 413.014.

Evaro submits that her case is controlled by Gregson v. Zurich Am. Ins. Co.[4] The insurance carrier in Gregson found the plaintiff's injury compensable and agreed to provide coverage for back surgery. However, the carrier refused payment for the medication prescribed to the plaintiff following surgery; the plaintiff argued that was a breach of its duty of good faith. This Court found that the plaintiff was not required to exhaust his administrative remedies before bringing suit. First, the Court found that Fodge did not apply because the insurance carrier already found Gregson's injury compensable and agreed to provide coverage for his back surgery and all other reasonable and necessary benefits incident to the treatment - which included the post-surgery prescription. Therefore, the issue before it was whether an employee must exhaust administrative procedures with the TWCC when the carrier denies coverage of a medical benefit incident to the approved medical treatment. The Court stated that § 413.031(a) of the Texas Labor Code[5] provides for medical dispute resolution

---

[4] 322 F.3d 883 (5th Cir. 2003).

[5] A party, including a health care provider, is entitled to a review of a medical service provided or for which authorization of payment is sought if a health care provider is:
> (1) denied payment or paid a reduced amount for the medical service rendered;
> (2) denied authorization for the payment of the service requested or performed if authorization is required by the medical policies of the commission; or
> (3) ordered by the division to refund a payment received for a medical service rendered.

of disputes arising from *medical services rendered*; but, Gregson did not receive the medication so no medical service was rendered. Moreover, the provision stated it provided for review where *authorization of payment is sought*; however, a prescription does not require preauthorization of payment by the insurance carrier. Based on those conclusions, the Court found the medical dispute resolution procedure did not apply to Gregson's situation, nor did any other section of the Texas Labor or Administrative Code require an employee who sought a medical benefit which did not require preauthorization to exhaust any particular remedy. Therefore, Gregson was not required to exhaust an administrative remedy. In contrast, Dr. Oei was denied payment for a medical service that was actually rendered, and the invasive treatments Dr. Oei provided did require pre-authorization. TEX. LAB. CODE § 413.014; TEX. ADMIN. CODE § 134.600(h)-(i). Accordingly, Evaro and Dr. Oei were entitled to seek an administrative remedy. TEX. LAB. CODE § 413.031(a)-(c); Continental Cas. Ins. Co. v. Functional Restoration Assocs., 19 S.W.3d 393, 409 (Tex. 2000) ("When a workers' compensation insurer denies payment ... the worker or the health care provider can request review by a 'health care provider professional review organization.'"); Bone, 2003 WL 21810944 (finding the court lacked jurisdiction to adjudicate insurer's refusal to pay pain management bill where employee and physician did not exhaust their administrative remedies). Thus, Gregson is distinguishable.

The district court found that because Evaro did not utilize the medical dispute resolution process, Evaro did not exhaust her administrative remedies. Furthermore, the district court concluded Evaro was required to exhaust her administrative remedies pursuant to Texas state law before she filed a claim in court. We affirm essentially for the reasons stated by the district court in

---

TEX. LAB. CODE § 413.031(a)

7

its memorandum order. Because Evaro was required to exhaust her administrative remedies, and she did not, the district court did not have jurisdiction to hear her claim.

## II.     Stay versus dismissal

Evaro argues that if this Court finds the courts lack jurisdiction over her claim, the appropriate remedy is a stay rather than dismissal. Evaro avers that because she is not a health care provider, the statute does not provide standing for her to assert an administrative proceeding. Since TWCC does not have the power to grant her relief, Evaro argues TWCC's primary jurisdiction does not apply here and thus, a stay is more appropriate than a dismissal. For the reasons stated above, we find Evaro's arguments unpersuasive.

If a claim is not within a court's jurisdiction, and the impediment to jurisdiction cannot be removed, then it must be dismissed. Fodge, 63 S.W.3d at 805 (quotation marks omitted). The TWCC provisions state that a medical dispute review must be initiated within a year after the service in dispute. TEX. ADMIN. CODE § 133.307. Evaro's one year window to initiate review of Continental's non-payment in 2001 and reduced payment in 2002, or have Dr. Oei initiate review, has passed. Since, Evaro failed to exhaust her administrative remedies, and is now time barred from doing so, dismissal is proper.

### CONCLUSION

For the foregoing reasons, the ruling of the district court is AFFIRMED.

AFFIRMED.

8